This is a case about the burden of proof, specifically whether a government agency, in this case the Postal Service, must meet their burden of proof, or whether an administrative judge may do so for them. The petitioner, Petitioner Jewel Marshall-Mosby, was a postal supervisor of 28 years with an exemplary record. The Postal Service conducted a five-month investigation, not directed at Ms. Mosby, but which found that during this five-month period there were three discrete incidents where Ms. Mosby, there were errors in her time records. Supervisors are held to a pretty high standard. Do you think that applies here? Yes. Yes, Your Honor, it does. But in this case, the standard is the culpable negligence standard, which states that a person of her position, of the petitioner's position, what the person of the petitioner's position should have known or should have done, it makes the duty relative to the position, in this case the supervisor. In this particular case, the Postal Service charged her with culpable negligence. However, they never proved that she had actual knowledge of these errors, nor did they prove or even allege that there was any way that someone of the petitioner's position could have known about these errors. Instead, what they found was that the petitioner kept her own records, that she believed her records to be accurate, that she checked her actual pay against her own records and found that the pay she received was justified by the records she kept. Again, so there was no proof that she knew of this error. Moreover, the government didn't prove or didn't even argue that there were facts of which she should have known. The only time any information that proved that this simple mistake was made came into play was after the petitioner had been charged, after she had sought counsel, after she had gone through a formal discovery process and been granted access to electronic records. Did your client concede that the times indicated as to when she arrived and when she left were accurate? Once she was provided with that information, but again, it is our position that information only available upon formal discovery is not information that would have been available to a person of the petitioner's position and or expertise. The idea of the culpable negligence standard is that the duty is triggered by knowledge she had or should have had. Someone should not have had information that is simply not available. Information only available after being charged with a crime and going through formal discovery is information not available to that person. When you say information not available, what exactly is the information that was not available to her? This was the electronic records of the time clicks of going in and out. Well, but the information, the electronic clicks are simply evidence of a fact, right? That's correct. And the fact is when she left, right? That is correct. And who knows better when she left than she? I mean, this is information that's available to her and is more available to her than to anybody else, right? That's correct. But in this case, again, the petitioner kept these records and it is not without reason that somebody commits error. The very definition, the existence of the culpable negligence standard implies there is a difference between culpable negligence and a simple mistake. In this case, the post office and the board has reinterpreted culpable negligence to include any conceivable mistake, any simple error, particularly in this case where the error is such a small amount, under $240. While this very proceeding is going, such mistakes are being made by postal supervisors all across the country. We're not going to demote every single one of them. There must be a difference between culpable negligence and a simple mistake. And while, yes, the petitioner had a duty to do what is reasonable for someone of her position to ensure that she had accurate information, she did that. In this case, she just made a mistake. A mistake, and the money should have been paid back by normal post office procedures, but not a mistake rising to culpable negligence or coming anywhere near that. Now, the times here, let's take September 14th. Walk me through these times, let's say, for September 14th because I want to make sure I've got this right. She clocked in at 1.34 p.m., right? I believe so, yes. And she clocks out at 2.40 p.m., an hour later, is that right? I'm confused about how they're calculating this because then I see total time in building six hours after that. You're familiar with this. It's at page 21 of the opinion. I'm familiar with this. All right. I'm trying to figure out how long she was actually in the building before she left. Is there a disconnect between the 2.40 departure, which looks like an hour, she was there for an hour, or is the 8.45 for training? That's added, presumably. She's paid for that, I take it, and that doesn't count a clock in? In this case, the record shows there was a discrepancy, and this was part of the petitioner's confusion because her normal time there, part of it had been replaced with what? For training. For training, yes. All right. And that was part of the confusion. Her miscalculations, all three of them, were miscalculations involving a confusion between how she was supposed to account for training time. Why did her personal calendar then exactly match the incorrect pay? Because Ms. Mosby thought her calendar was correct. Well, let me ask a follow-up question to Judge Rader's question, because that's where I was going. She says on her personal calendar that she left at 12.30 that day, a.m., right? And in fact, she left at 2.40 p.m., right? Now, that's not, I can see making a mistake of 5 or 10 minutes. My watch is fast, you know, I didn't, I glanced at the clock, but that's a big mistake. In this case, the petitioner paid attention to the total hours, not, because that's what the… Even so, even if that's true, she was four and a half hours off, right? But in this case, because her pay rate is calculated not just the hours she's there, it's calculated based on the time of day. In her case, she gets an additional, because she's working odd hours. Even though the training occurs during normal duty hours, she's supposed to be credited with her working hours. And there was essentially a mistake in her understanding of how to calculate that. But that mistake, if I understand her claim of mistake, couldn't account for all of those hours. It would account at most for, well, at least four and a half hours unaccounted for, doesn't it? That's possible. The petitioner has always maintained that she believed her calculations to be correct. And that gets us to even assuming she was culpably negligent for accepting excess pay, the post office has failed to apply the Douglas test, the Douglas analysis, and therefore has imposed an unreasonable punishment. The Douglas test, of course, lists 12 factors. It specifies that these factors are not applied mechanistically. The agency is allowed to pick and choose, to make its own determination of which factors apply and how and why they should apply. However, the fundamental element of the Douglas test is that the agency has an affirmative duty to actually make some deliberate analysis. They must actually think about the punishment. But the administrative judge took that into account, recognized the fact that some of the Douglas factors weren't considered, and weighed and evaluated and balanced and reached a conclusion that the penalty was reasonable. That is the heart of this case, we believe. In this particular case, while the administrative judge weighed those factors, the agency did not. In fact, the agency specifically testified that very relevant factors, such as the fact that this is something that is not uncommon and that there's an existing policy to deal with it. The agency specifically testified they didn't even think about that. They didn't consider it. Moreover, the agency specifically testified that they actually didn't make any effort to think about what factors they were including and what factors they weren't. We submit that when an agency specifically testifies it made no effort at no rational determination of why or how it did the Douglas analysis, it cannot meet the Douglas test burden of proving that it made a rational analysis. We, of course, believe it was error for the administrative judge to just presume such analysis took place. Where the agency has said they did not do a thing, we believe the board erred by upholding an administrative judge's assumption that they did. Do you want to say your rebuttal, Mr. Radley? Yes, Your Honor. Okay, thank you. Mr. Klingman? May it please the Court, the decision of the board should be affirmed. Substantial evidence demonstrates that Ms. Marshall Moseby abused her supervisory authority by manipulating her time and attendance records through a subordinated employee for personal gain. The agency initially considered removing her, but after weighing the relevant Douglas factors, the agency and the board determined that the lesser penalty of demotion was appropriate. From a 13 to a 7, that's a pretty stiff penalty, isn't it? Well, there is no evidence as to... It may be a lesser penalty, but it's barely a lesser penalty. It is a significant penalty. A part-time mail clerk from a supervisor, that's a pretty stiff penalty, isn't it? It's true, Your Honor, that it is a significant penalty, but it is a penalty that the board and the administrative judge found was warranted in this case due to the nature of the offense, weighing the Douglas factors. Seven hours over five months amounting to $240. If you were going to cheat, do you suppose you'd only cheat for $240? Well, we don't have evidence as to why if, you know, as you characterize... I'm suggesting that that sounds more like a mistake than a desire to defraud the government and make lots of extra money. You're not doing it very well if it's only $200. Well, there are two responses I have. First is that the standard here was not, in fact, fraud or intent. The standard is culpable negligence, and that's why she was... I'm questioning the culpable part of that. Obviously, there's been some mistakes. I'm questioning the culpable. It has to do with, in addition to what counsel has characterized as a mistake, it actually went much beyond that. It was an instruction or a request to a subordinate, which is in the nature of an instruction, to alter her NTOR times for the three dates in question. Now, we don't have this, as far as I know in the record, information as to why other dates might not have been changed. It might be that she worked till 1230 on those other dates, and these were the only dates on which she could change the hours and directed the change. But the broader point is that by instructing or requesting that a subordinate employee change her hours and then noting the changed hours in her personal calendar and then accepting that pay and not informing the agency, not reporting the overpayment, those facts taken together did warrant the penalty of demotion in this case. Help me out again. Let me take you to September 14th, which is the day that strikes me as the most problematical in trying to understand how this plays into the theory of the case. She arrived initially at 845 in the morning for training, correct? That's correct. And so she's supposed to be paid for that training period, I take it. That is my understanding. And then she clocks in to her actual job at 134, correct? Correct. And then clocks out at 240. Now, what would have happened if she had not asked for any adjustment at all of the departure time? Would she have only been credited with one hour of work on that day? I'm not aware of anything in the record that explains what happens when a person's clock rings only show one hour. Where I'm going with this is this. Was this a situation in which she needed to have an adjustment made in order to get her credit for the time between 845 and 134 so that she would be paid what she was entitled to be paid? That is to say that she needed to go get something adjusted beyond what the clocks would have naturally shown. I'm not aware of anything in the record that addresses that particular question. If we could assume that some adjustment needed to be made because her training was not on site, then the proper adjustment, as the administrative judge found, would have been to give her the 845 to 240 timeframe, thereby giving her six hours of straight pay. Without the night difference? That's correct, Your Honor. But this is sounding more like a mistake than an intent to defraud, isn't it? It's not sounding like a mistake when the manner in which this adjustment is carried out is to ask a subordinate to make the change without reporting any overpayment. And the resulting hours are, in fact, six premium hours and four and a half regular hours, essentially netting four additional hours and six additional hours of premium pay that the administrative judge did not find that that was a credible method. And furthermore, Ms. Marshall Mosby denied ever having asked Ms. Williams Bay to change her hours at all. She had the opportunity to say, yes, I did ask her to change them, and here's why. She never did any of that. Seven hours over five months. I think if you applied that standard to lawyer billing rates, we wouldn't have many lawyers working, would we? Well, lawyers are expected to keep track of their hours accurately, as accurately as possible. And certainly mistakes can be made, but not when they're done with this sort of method of carrying it out, of changing your personal counter to reflect inaccurate hours and then to request that your subordinate employee make changes to the time and attendance system and then not report the resulting hours, which were clearly more than what she had worked. What did you address? I'm sorry. What about Mr. Radowitz's argument that even though the administrative judge considered and evaluated and balanced the Douglas factors and recognized that certain factors were not taken into account by the agency, his argument is that the agency needed to take into account all of these factors. And because the agency did not take into account all of the relevant Douglas factors, including the amount of money involved, that renders the penalty questionable. Well, in fact, the court in Douglas said that the board need not consider every one of the 12 Douglas factors mechanistically by a preordained formula. This court stated that and was summarizing Douglas. Is the obligation to consider Douglas factors an obligation on the agency or just the board? It's an obligation on both. In this case, the agency did consider her past work record. It considered the nature and seriousness of the offense. Although it did not consider the frequency or amount of unearned pay, it did consider that she had left the facility and admitted to leaving the facility at the times specified in the proposal notice, that she recorded incorrect, false tee time hours in her calendar, that she manipulated the time and attendance system, and that she reviewed her pay steps and compared them to her personal calendar. But wouldn't it make a vast difference if we were talking about discrepancies that took place over an extended period of time, amounted to thousands of dollars, as compared to an incident over just a few days amounting to only $240? Isn't that a significant fact that one would expect to be taken into account? Yes, Your Honor. I mean, it's possible that those, in some circumstances, could be relevant factors. But in this case, it's simply one of the factors for the Douglas test is the nature and seriousness of the offense overall. And the fact that she had instructed an employee to make these changes, that she had recorded her hours falsely, the administrative judge correctly found that, and the board affirmed, that the agency's demotion decision was rational, even if it did not consider- All of the conduct in question here, the instructions to her subordinate to change records, et cetera, was simply resulted in an adjustment of one hour. Then the agency- Ten dollars. Right, and the agency and the administrative judge may well have come to a different conclusion in that case. I mean, there's certainly a sliding scale had the result been thousands of hours. But you're saying that the fact that they didn't consider it at all really doesn't matter. All these other factors override that omission. Well, and in fact, what we have here is a case of culpable negligence, and this Court has never held that there's a per se bar in demoting or removing even an employee for personal negligence when there was no personal gain. So certainly when there is personal gain, no matter how large or small, this Court has certainly never held that just because there's negligence or because it was a small amount involved, therefore the agency is not within its rights to demote or even remove the person. In the cases we cite, some of which are unpublished, we've demonstrated that the Court has done so. And so in this case, we do have an amount of about $240 in pay. One might analogize to taking, say, some valuable piece of equipment that was worth $240 out of a federal office. Would the agency be justified in demoting a person for essentially stealing a $240 piece of equipment, say a printer? And I think the answer is yes. So again, the agency and the Board did consider all of those factors, including her supervisory role, the fact that she was responsible for managing time and attendance of employees and ensuring that they were correctly paid, and also that she had a low potential for rehabilitation and that she lacked remorse and she did not wrong to them. Counsel has indicated that she did not have information available to her, that the records were not available to her, but as Your Honor correctly pointed out, she did know when she left the facility, and so we submit that there was sufficient grounds and substantial evidence for the Board finding that she was culpably negligent. One other point I'd like to address is this supposed policy that counsel has referred to. In fact, the testimony from the deciding official was simply in response to a question, does the postal service have a mechanism to require employees to pay back wages and salaries that are overpaid? And she said yes. And then the follow-up question, so it's not uncommon for employees to be overpaid due to mistakes or errors? And the answer was correct. Now, counsel has attempted to, in the briefs and today, to raise that into some sort of policy, dealing with all possible punishment and penalties, and that is simply not the case. There's simply some testimony that the mechanism, when someone is overpaid by mistake or error, to pay back that money. Here we have something very different. We have a knowing alteration of hours and a knowing acceptance of pay for time not worked. And this bit of testimony here does not address whether there's a procedure or policy regarding penalties, whether there's evidence of penalties imposed on other employees who accepted an overpayment, and no evidence how any other overpayments occurred, whether they were done through manipulation or simply an inadvertent error. We don't have, I guess, Mrs. Rice's testimony in the appendix, correct? No. There's a reference to. Actually. Do we have it? I was looking for it. Yes, Your Honor. Okay, good. Where is it? It's the hearing transcript, page 89, which is numbered A27 in Petitioner's Appendix. Twenty-seven? A27. The tab is A26. Well, all I see there is A.J.'s discussion of penalty. Am I in the wrong document? My version of Petitioner's Appendix was tabbed.  No. There's a corrected appendix that is the same document that Judge Bryson is looking at. It's the one I'm looking at. Page 27 is the administrative judge's decision. Then I apologize. Perhaps I have the wrong appendix. But it comes after the case of Klein v. Department of Transportation. Perhaps it's the transcript beginning on page 39. Perhaps. There were three pages of transcript. Oh, I see. This is a very short excerpt. I see. Okay. And that's Mrs. Rice? It isn't identified. Yes, Your Honor. I assume so. Although there is no indication here that that is Mrs. Rice. All right. But that's what you're representing. That's Mrs. Rice. Yes, Your Honor. Good. Thank you. I see my time is almost up. In conclusion, substantial evidence demonstrates that Ms. Marshall Mosby manipulated her time and attendance records through a subordinate and made false entries in her personal calendar, that she accepted the resulting unearned pay without reporting that pay, and that her demotion was a reasonable penalty. For these reasons, the final decision of the MSPB should be affirmed. Thank you, Mr. Herring. Could I ask one further question, again, about the transcript here? The pages, this is sometimes a source of frustration for us when looking at appendices and not having access to the full record, but we have three rather separate pages. We have page 43, page 89, and page 93 of the transcript. The pertinent page with respect to the discussion of the amount of money at issue is page 89, which is at JA40. But it appears that this is part of an ongoing discussion of the Douglas factors. Do you happen to have access to the full transcript, which would indicate anything else that was said on the Douglas issue? I've reviewed the transcript. I don't have it with me. But my understanding is there were, in fact, I believe Ms. Marshall-Moseley's brief, I believe it was her ply brief, referred to line 25 of page 88 of the transcript. So it was only one line that we don't have here. Well, you say there's only one line that we don't have. You mean there's only one line that's pertinent in any way to the Douglas issue? One line that's pertinent to the monetary question. No, no, but the Douglas issue in general. Oh, the Douglas issues. Well, there's also page 93. Well, I understand, but what I'm trying to get at is is there some additional discussion or questioning about the Douglas factors beyond the end of page 88 and 89 and then 93? Certainly there was testimony, and again, that is not included in the appendix, but there was testimony upon which the Administrative Judge relied regarding her supervisory role, the fact that she was responsible for managing the time and attendance of employees, all of the discussion of the nature and seriousness of the offense and her low potential for rehabilitation, lack of remorse, and denial of wrongdoing. And now nature and seriousness of the offense, you say, was discussed between 89 and 93? I don't believe so, Your Honor. I don't believe that was discussed in those pages. I believe it was discussed throughout in various parts of the hearing transcript, and that's what the Administrative Judge relied upon in looking at these various factors, and again, including her lack of remorse and denial of wrongdoing, the fact that they did review her past work record, her 28 years of service, and that's on hearing transcript page 93. Okay. Thank you, Mr. Klingman. Thank you. Mr. Radowitz, you have about four and a half minutes remaining. I would like to begin by agreeing with the respondent on a point, that Jule Marshall Mosby was punished for manipulating time, for altering time, for directing a change, for instructing or requesting time, for stealing money. But these were not the infractions with which Jule Marshall Mosby was charged. She was charged with merely accepting an overpayment. There's a very good reason for that. The Post Office knew that Jule Marshall Mosby did not commit any of these intentional crimes. They knew they couldn't prove it, and so they didn't even try. Instead, they brought a lesser charge. I believe they did not even prove the lesser charge. But even if they had, they clearly did not apply the Douglas factors, because as the Post Office has maintained all along, even to this very day, they have punished her for a far more severe crime than that which she was ever charged and certainly more severe than anything they have proven against her. The Douglas factors are not a smokescreen by which the agency can claim justification for a punishment after the fact. The Douglas test is an affirmative duty upon the agency. It gives the agency wide latitude. It merely says these are factors. You can apply them in any way you want, but you've got to apply them, and it's your job to prove that you actually thought about what you're doing, that you made some effort to make the punishment fit the crime or the error in this case. The Post Office made no such effort. The Post Office very specifically testified that we didn't even think about this. We didn't even think about this. We didn't think about this. We thought about this, this, and this. We don't have most of that testimony, right? That would be the testimony in that section. We have enough. We have what the respondent said right here. I mean, we know that the Post Office recognizes this happens and that they didn't consider how they handle it every other time that an incident like this happens. And most importantly, again, there's no justification. Let me tell you specifically where I'm going with that. Counsel for the government says that there was discussion of the nature and seriousness of the offense in some of the pages that we don't have. At least I may be reading more into what he said than he did. But that would presumably be another way of saying that this was a more serious offense rather than saying that you took into account the specific amount of money. I mean, it's another way of saying this isn't just a minor technical error. I guess what I'm asking is what is it that is in those other pages that we don't have that might reflect on the nature and seriousness of the offense? Just the main factors that affect or that are relevant to the nature and seriousness, this is a 28-year career, a five-month investigation, that found three very minimal errors. Well, it's what Mrs. Fox is testifying here in this section, and I assume that you or someone else is cross-examining. Someone else. Yeah, okay. And what does she say about nature and seriousness of the offense that we don't have here? She doesn't say anything. She just lists, oh, we took this into account. That's it. That's just the point. The post office has never... It's as though the post office got caught just throwing out a punishment that they did not consider and then said, oh, well, we took this into account, we took this into account. The very fact that they could simply say they took it into account but not show any kind of analysis was their reason for specifying those factors. It's not that they considered them. It's that they could get away with merely saying they did because such consideration had no real material impact on the case. It is more to the point that there is a very real factor that these things happen not uncommonly, that there's a way of dealing with them, that the post office very specifically said, well, we really didn't think about that. Thank you, Mr. Radowitz. Thank you.